UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

GARY DUFRESNE,

    Plaintiff,

    vs.                                            No. 3:14cv21(WIG)

O.F. MOSSBERG AND SONS, INC.,

    Defendant.

_____X

## RULING ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Plaintiff Gary Dufresne has brought this action against O.F. Mossberg and Sons, Inc. ("Mossberg" or "Defendant") alleging Mossberg failed to hire him based on a perception of disability in violation of the Americans with Disabilities Act, 42 U.S.C. §§12102 *et seq.* (the "ADA"). Plaintiff also alleges that Defendant failed to accommodate his perceived disability. Defendant has moved for summary judgment on all counts of Plaintiff's complaint. [Doc. # 37]. For the reasons set forth below, Defendant's motion is granted

### Background

The facts as presented are undisputed unless otherwise indicated.[1] Defendant is a family-owned firearms manufacturer located in North Haven, Connecticut. On July 18, 2012, Plaintiff applied for a Third Shift Lead Production Operator position with Mossberg.[2] Plaintiff had been

---

[1] Where the parties have agreed to a statement of fact, no citation to the Local Rule 56 Statements has been provided. Citations to the record have been included if there was any dispute as to the accuracy of a statement, affidavit, or testimony.

[2] Plaintiff's affidavit, attached to his Opposition to Defendant's Motion for Summary Judgment, states that Plaintiff applied for a position with Mossberg as a machinist, and that the position for third shift lead man, the position he was offered, was not what was advertised or what he interviewed for. In his Rule 56(a)(2) Statement, however, Plaintiff admits that he applied for the Third Shift Lead Production Operator position.

employed as a machinist for all of his adult life. [Affidavit of Gary Dufresne, ¶ 4]. Plaintiff was interviewed for the position on July 23, 2012, and was offered the position conditional upon the successful completion of a pre-employment background check, drug test, and physical. These pre-employment procedures were typical. [Affidavit of Lawrence Lacoste ¶ 9]. The Third Shift Lead Production Operator position involved operating and working around large CNC machines. At the time Plaintiff applied for the position, there were only three to four employees who worked in the production area during the third shift. The production area is very spread out, so the Third Shift Lead Production Operator would not be working in close proximity to other workers. There is no supervisor in the production area during the third shift. [Affidavit of Lawrence Lacoste ¶ 13].

Plaintiff submitted to his pre-employment physical on July 31, 2012. Dr. Rhonda Gold conduced the exam at Concentra Medical Centers. The physical encompassed Plaintiff answering written questions involving his medical history, and an examination by Dr. Gold. In responding to written questions, Plaintiff circled "yes" to questions indicating he had a history of chest pain, fainting spells, heart disease, high blood pressure, shortness of breath, and surgery. [Ex. 2 to Affidavit of Lawrence Lacoste]. Dr. Gold's notes on the exam form indicate cardiac node ablation on May 2, 2012; a syncopal episode in June 2012; and that Plaintiff saw a cardiologist in July 2012. [Ex. 2 to Affidavit of Lawrence Lacoste]. Dr. Gold also noted that Plaintiff "still has near-syncopal sensations," would be returning to the cardiologist in October 2012, and "may need pacemaker." [Ex. 2 to Affidavit of Lawrence Lacoste]. Plaintiff denies experiencing near-fainting sensations, and asserts that his condition is not severe enough such that a pacemaker is necessary. [Affidavit of Gary Dufresne, ¶¶ 10-11]. As a result of her examination, Dr. Gold determined that Plaintiff was unable to perform the essential functions of

the operator position; she specifically found that Plaintiff could not work without direct supervision and could not work around machinery or in a safety-sensitive position.

Because of the results of the pre-employment physical, Mossberg determined that Plaintiff was not qualified for the position and withdrew its job offer to Plaintiff.  [Affidavit of Lawrence Lacoste ¶ 16].

Plaintiff concedes that he is not disabled.  Plaintiff did not request any reasonable accommodation in connection with potential employment at Mossberg, and believes that he did not require any accommodations to perform the duties of the Third Shift Lead Production Operator position.

## **Summary Judgment Standard**

Rule 56(a) provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Rule 56(a), Fed. R. Civ. P.  The burden is on the moving party to demonstrate the absence of any material factual issue genuinely in dispute.  *Am. Int'l Group, Inc. v. London Am. Int'l Corp. Ltd.*, 664 F.2d 348, 351 (2d Cir. 1981).  The substantive law governing the claims in a case will identify those facts that are material.   A fact is "material" if it "might affect the outcome of the suit under the governing law."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute as to a material fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Id.*

Thus, the Court's function in ruling on a motion for summary judgment is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."  *Id.* at 249.   In making this determination, the Court should review all of the evidence in the record and resolve all ambiguities and draw all reasonable inferences in favor of

the non-moving party.  *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).  The Court, however, may not make credibility determinations.  *Id.*  "Only when reasonable minds could not differ as to the import of the evidence is summary judgment proper." *Bryant v. Maffucci*, 923 F.2d 979, 982 (2d Cir. 1991), *cert. denied*, 502 U.S. 849 (1991).  Stated differently, "if there is any evidence in the record that could reasonably support a jury's verdict for the non-moving party," summary judgment must be denied.  *Marvel Characters, Inc. v. Simon*, 310 F.3d 280, 286 (2d Cir. 2002).

## Discussion

### *Discrimination Claims under the ADA*

The ADA directs that "no covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment."  42 U.S.C.A. § 12112(a).  Under the ADA, employers may not discriminate "against a qualified individual with respect to hiring because of a real or perceived disability." *E.E.O.C. v. Blue Cross Blue Shield of Connecticut*, 30 F. Supp. 2d 296, 304 (D. Conn. 1998) (citing 42 U.S.C. § 12112(a)).  Here, Plaintiff claims that Mossburg violated the ADA by failing to hire him and by failing to accommodate him.  Plaintiff's claims are governed by the burden shifting analysis from *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973).  *See Ruszkowski v. Kaleida Health Sys.*, 422 F.App'x 58, 60 (2d Cir. 2011).  This framework first requires Plaintiff to make out a prima facie case of employment discrimination.  *Id.*  Plaintiff may not satisfy his burden at this step by "offering purely conclusory allegations of discrimination, absent any concrete particulars."  *Meiri v. Dacon*, 759 F.2d 989, 998 (2d Cir. 1985).  Once Plaintiff has made a prima facie showing, "the burden of production shifts to the employer to demonstrate a legitimate, non-discriminatory reason for its decision not to hire the

Plaintiff." *Ruszkoswki*, 422 F.App'x at 60.  "The burden then shifts back to the plaintiff to present evidence that the employer's proffered reason is a pretext for an impermissible motivation."  *Id.*  Plaintiff can establish pretext by "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence."  *Meiri*, 759 F.2d at 997.

### *Failure to Hire*

To make out a prima facie case of disability discrimination with respect to his failure to hire claim, Plaintiff must show that (1) he is a person with a disability under the meaning of the ADA; (2) Defendant is an employer subject to the ADA; (3) he could perform the essential functions of his job with or without reasonable accommodation; and (4) he was terminated or suffered some other adverse employment action because of his disability.  *Reeves v. Johnson Controls World Servs., Inc.*, 140 F.3d 144, 149-50 (2d Cir. 1998).

Defendant has moved for summary judgment on Plaintiff's failure to hire claim on the grounds that Plaintiff cannot establish a prima facie case of disability discrimination.  Because Plaintiff has not offered any evidence showing he is a person with a disability within the meaning of the ADA, or that Mossberg regarded him to be, the Court agrees.

The ADA defines disability as: "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment."  42 U.S.C. § 12102(2).  "Major life activities" is defined by the regulations to include functions such as "caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working."  29 C.F.R. § 1630.2(i).  Because the Equal Employment Opportunity Commission ("EEOC") is responsible for implementing the ADA, courts defer to the EEOC regulations in

interpreting the ADA's terms. *Giordano v. City of New York*, 274 F.3d 740, 747(2d Cir. 2001). To be considered disabled under the Act, the impairment must substantially limit one or more major life activities. 42 U.S.C. § 12102(1). An impairment "substantially limits a major life activity if it renders a person either (i) unable to perform a major life activity that the average person in the general population can perform; or (ii) significantly restricted as to the condition, manner or duration under which an individual can perform that activity in comparison to the average person in the general population. *Giordano* at 747 (citing 29 C.F.R. § 1630.2(j)(1)) (internal quotation marks omitted). When, as here, the relevant life activity is "working," the EEOC regulations define "substantially limits" more precisely:

> (i) The term substantially limits means significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities. *The inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working.*

*Id.* at 747-48 (citing § 29 C.F.R. 1630.2(j)(3)) (emphasis added). As the Supreme Court has elucidated, "[t]o be substantially limited in the major life activity of working […] one must be precluded from more than one type of job, a specialized job, or a particular job of choice." *Id.* (citing *Sutton v. United Air Lines, Inc.,* 527 U.S. 471, 492 (1999). In other words, the Plaintiff must be foreclosed from "a wide range of employment options within the employee's field and foreclose[ed] generally [from] the type of employment involved." *E.E.O.C.*, 30 F.Supp.2d at 305.

Relevant here is how Mossberg perceived Plaintiff's alleged impairment. *See Giordano*, 274 F.3d at 748 (citing 42 U.S.C. § 12102(2)(C)). Plaintiff "must show not only that the defendants regarded him as somehow disabled, but that they regarded him as disabled *within the meaning of the ADA*"; that they perceived him as substantially limited in his ability to work. *Id.*

(emphasis in original) (internal quotation marks and citation omitted).  *Id.* (internal quotation marks omitted) (emphasis in original).

An employee can be "regarded as" disabled in two ways: "(1) a covered entity mistakenly believes that a person has a physical impairment that substantially limits one or more major life activities, or (2) a covered entity mistakenly believes that an actual, nonlimiting impairment substantially limits one or more major life activities." *Sutton*, 527 U.S. at 489.

Here, Plaintiff does not argue that he is disabled under the ADA.  In fact, he maintains that he does not have a disability.  *See* Plaintiff's Rule 56(a)(2) Statement, Doc. # 46.  Plaintiff claims that Defendant believed him to suffer from an impairment, specifically heart disease. Plaintiff has not, however, presented any evidence to suggest that Mossburg regarded him as disabled *within the meaning of the Act*.  The evidence of record shows that Mossberg credited Dr. Gold's opinion that Plaintiff cannot work without direct supervision or in a safety-sensitive position.  There is no evidence to even intimate that Mossberg perceived Plaintiff as unable to work a broad range of jobs.

In contrast to providing the evidence necessary to establish that Mossberg viewed him as disabled within the meaning of the ADA, Plaintiff has conceded that his health issues are not substantially limited.  In *Siederbaum v. City of New York*, 309 F.Supp. 2d 618 (S.D.N.Y. 2004) *aff'd sub nom. Siederbaum v. New York City Transit Auth.*, 121 F.App'x 435 (2d Cir. 2005), the plaintiff applied for a position as a bus driver, but was disqualified from the job after a pre-employment medical exam confirmed that he was diagnosed with, and being treated for, bipolar disorder.  The court determined that plaintiff was unable to make out a prima facie case of employment discrimination under the ADA because he could not show that the employer regarded him as disabled within the meaning of the ADA.  *Id.* at 628.  Critical to the court's

analysis was that plaintiff did not "sufficiently establish" that the employer "regarded him as unable to perform a broad range of jobs." *Id.* at 625. The *Siederbaum* plaintiff, like the Plaintiff here, "conceded that his [impairment] is not substantially limiting." *Id.* at 627.

In addition, Plaintiff also concedes that he is able to work. This fact is "key" in determining that Plaintiff failed to provide any evidence showing that Defendant regarded him as disabled for purposes of the ADA. *See Turner v. Eastconn Reg'l Educ. Serv. Ctr.*, No. 3:12-CV-00788 VLB, 2013 WL 6230092, at *7 (D. Conn. Dec. 2, 2013) *aff'd,* 588 F.App'x 41 (2d Cir. 2014) (finding that because plaintiff conceded she was able to work, and did not show how her impairment limited a major life activity, "no reasonable trier of fact could find that the plaintiff has a disability as defined in the ADA."). Because Plaintiff is "not foreclosed from a broad class of positions, and he has presented no evidence that the defendants regarded him to be," summary judgment must enter in Defendant's favor as to the failure to hire claim. *Burton v. Metro. Transp. Auth.*, 244 F. Supp. 2d 252, 259 (S.D.N.Y. 2003).

Plaintiff also argues that summary judgment should be denied because there is evidence of animus by someone in a supervisory role at Mossberg. It is Plaintiff who hears the burden of establishing an ADA violation motved by discriminatory animus due to disability. *See Day v. Warren*, No. 3:06-cv-155(AWT), 2008 WL 474261 (D. Conn. Feb. 7, 2008). Plaintiff cannot establish this because he is not actually alleging discriminatory animus due to disability. Rather, he is claiming that Defendant used the pre-employment physical results to rescind the job offer because one of the supervisors at Mossberg "was not happy with his attitude." [Plaintiff's Ex. C, Doc. 46]. So, Plaintiff's claim actually is that the job offer was rescinded because the employer did not care for his attitude, rather than because Mossberg perceived that Plaintiff had a disability

8

and had animus because of that perceived disability. This does not bring Plaintiff within the ambit of the ADA such that his failure to hire claim can proceed.

### *Failure to Accommodate*

Plaintiff also alleges that Defendant failed to accommodate his perceived disability. To make out a prima facie case of disability discrimination arising out of Defendant's failure to accommodate him, Plaintiff must show that (1) he is a person with a disability within the meaning of the ADA; (2) Defendant is an employer covered by the ADA and had notice of his disability; (3) with reasonable accommodation, he could perform the essential functions of his job; and (4) Defendant refused to make such accommodations. *Graves v. Finch Pruyn & Co.*, 457 F.3d 181, 184 (2d Cir. 2006). Defendant has moved for summary judgment on Plaintiff's failure to accommodate claim on the ground that there is no cause of action for failure to accommodate a perceived disability.

To begin, as discussed above, because Plaintiff does not have a disability within the meaning of the ADA, he is unable to meet the first prong of his prima facie case. *See, e.g.*, *DiCara v. Connecticut Rivers Council*, 663 F. Supp. 2d 85, 94 (D. Conn. 2009).

Even if this was not the case, Plaintiff's claim for failure to accommodate must fail as a matter of law. The ADA's implementing regulations instruct that the "covered entity is required, absent undue hardship, to provide a reasonable accommodation to an otherwise qualified individual who meets the definition of disability under the 'actual disability' prong (paragraph (g)(1)(i) of this section), or 'record of' prong (paragraph (g)(1)(ii) of this section), but is not required to provide a reasonable accommodation to an individual who meets the definition of disability solely under the 'regarded as' prong (paragraph (g)(1)(iii) of this section)." 29 C.F.R. § 1630.2(o)(4). Courts have interpreted this provision to bar, as a matter of law, claims for

9

failure to accommodate an individual who is *regarded as* disabled, but *is not* disabled. *See Graham v. Three Vill. Cent. Sch. Dist.*, No. 11-CV-5182, 2013 WL 5445736, at *11 (E.D.N.Y. Sept. 30, 2013) (holding that under the ADAAA it is clear that a failure to accommodate claim cannot, as a matter of law, be made for an individual who was regarded as, but not disabled); *Morris v. Town of Islip*, No. 12-CV-2984 JFB SIL, 2014 WL 4700227, at *8 (E.D.N.Y. Sept. 22, 2014) *(finding that the "'regarded as' theory of disability is no longer actionable in the context of a failure to accommodate claim.")*; *accord Powers v. USF Holland, Inc.,* 667 F.3d 815, 823 n. 7 (7th Cir.2011) ("[T]he ADAAA clarified that an individual 'regarded as' disabled (as opposed to actually disabled) is not entitled to a 'reasonable accommodation.'"). Accordingly, Defendant's motion for summary judgment must be granted as to the failure to accommodate claim.[3]

## Conclusion

For the reasons set forth above, the Court grants Defendant's Motion for Summary Judgment as to all counts of the Plaintiff's complaint. The Clerk shall enter judgment accordingly and close this case.

It is SO ORDERED, this   15th   day of June, 2015, at Bridgeport, Connecticut.

   /s/ *William I. Garfinkel*
   WILLIAM I. GARFINKEL
   United States Magistrate Judge

---

[3] Plaintiff also argues he was entitled to an alternative position. "In the context of the ADA, a reasonable accommodation may include, *inter alia*, modification of job duties and schedules, alteration of the facilities in which a job is performed, acquisition of devices to assist the performance of job duties, and, under certain circumstances, reassignment to a vacant position." *McBride v. BIC Consumer Products Mfg. Co.*, 583 F.3d 92, 97 (2d Cir. 2009) (citing 42 U.S.C. § 12111(9)(B)). Plaintiff "bears the burdens of both production and persuasion as to […] the existence of a vacant position for which [he] is qualified." *Id.* Plaintiff has offered no such evidence, so this argument must fail.